UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MIAKEL GUERRA MORALES,

       Petitioner,

v.                                    Case No.  2:26-cv-133-JES-DNF

FIELD OFFICE DIRECTOR, MIAMI
FIELD OFFICE, et al.,

       Respondents.

_____/

## OPINION AND ORDER

Petitioner Miakel Guerra Morales, an immigration detainee, initiated this action by filing a pro se 28 U.S.C. § 2241 petition for writ of habeas corpus.  (Doc. 1).  Respondents have filed a response (Doc. 9) and a supplemental response (Doc. 23) to the petition.  Guerra Morales has filed a reply (Doc. 12) and a supplemental reply (Doc. 17).  Upon review of the parties' filings, the Court finds that the petition must be granted.

## I.    Background

Miakel Guerra Morales is a national and citizen of Cuba who entered the United States on March 19, 2003 when he and at least eleven other Cuban nationals boarded a commuter aircraft in Nueva Gerona, Cuba, assaulted the crew, and forced the pilot to land in Key West, Florida.  See U.S. v. Arias-Izquierdo, 449 F.3d 1168 (11th Cir. 2006).  Guerra Morales was ultimately sentenced to 264

months in prison for aircraft piracy and conspiracy to interfere with a flight crew. (Doc. 9 at 2; Doc. 9-2 at 1).

After he spent 21 years in prison, Immigration and Customs Enforcement (ICE) placed Guerra Morales in removal proceedings, and an immigration judge ordered him removed. (Doc. 9 at 2). However, the immigration judge deferred his removal to Cuba because of a Convention Against Torture (CAT) claim. (Id.)[1] Thus, on March 1, 2023, ICE released Guerra Morales under an order of supervision. (Id.)

Despite complying with all terms of his order of supervision, ICE arrested Guerra Morales on December 30, 2025 after determining that "it intends to remove Guerra Morales to Mexico." (Doc. 9 at 2).

## II.  Discussion

"Once a noncitizen's order of removal becomes administratively final, the Government 'shall' remove the person within 90 days." Singh v. U.S. Attorney Gen., 945 F.3d 1310, 1313 (11th Cir. 2019) (quoting 8 U.S.C. § 1231(a)(1)(A)). The government must detain the noncitizen during the 90-day removal

---

[1] The immigration court granted CAT protection on May 16, 2022. The Department of Homeland Security appealed, and the Board of Immigration Appeals remanded the case to the immigration court on November 11, 2022. On March 1, 2023, the immigration court reaffirmed its grant of CAT protection to Petitioner. (Doc. 1 at 2).

period, which begins when the removal order becomes administratively final. Id. Detention may continue after the removal period, but not indefinitely.

Guerra Morales argues that he is entitled to release under Zadvydas v. Davis, 533 U.S. 678 (2001), because his post-removal-order detention exceeds six months and there is no significant likelihood of removal in the reasonably foreseeable future. In Zadvydas, the Supreme Court held that "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." 533 U.S. at 700-01 (2001). If removal is not practically attainable, detention no longer serves its statutory purpose of "assuring the alien's presence at the moment of removal." Id. at 699. The Court found it unlikely Congress "believed that all reasonably foreseeably removals could be accomplished in [90 days]." Id. at 701. So, "for the sake of uniform administration in the federal courts," it established a "presumptively reasonable period of detention" of six months—the 90-day removal period plus an additional 90 days. Id. If, after 180 days, the noncitizen provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the government must provide sufficient evidence to show otherwise. Id.[2]

---

[2] The Supreme Court subsequently clarified that inadmissible aliens held in post-removal detention are also entitled to this

On February 15, 2026, Respondents argued that Guerra Morales was not entitled to release under Zadvydas because he had been detained only 24 days when he filed his petition on January 23, 2026. (Doc. 9 at 10). Now there is no dispute that Guerra Morales has been in ICE custody for more than six months following his latest order of removal. Thus, on June 29, 2026, the Court directed Respondents to update the Court with progress by "describe[ing] in detail all efforts made to secure Guerra Morales's removal." (Doc. 21).

In their supplemental response (Doc. 23), Respondents reassert only that "[a] final order of removal was entered against [Guerra Morales and ICE intends to remove him to Mexico." (Doc. 23 at 1).[3] Respondents do not allege that Mexico has actually agreed to accept Guerra Morales. In fact, Respondents provide no evidence suggesting that ICE has communicated with Mexico specifically regarding Guerra Morales. Nor do Respondents claim

---

type of individualized review after their detention exceeds six months. See Clark v. Martinez, 543 U.S. 371 (2005) (extending Zadvydas's holding to inadmissible aliens as a matter of statutory interpretation).

[3] Respondents also argue that—because he filed his habeas petition before 180 days had passed—the Court should now require Guerra Morales to dismiss this action and refile an identical petition. (Doc. 23 at 2). But forcing Guerra Morales to refile the same petition at this point would add to the crushing amount of case management associated with the hundreds of immigration petitions filed in Fort Myers in the past six months and would serve little purpose other than delay.

that necessary travel documents have been sought—let alone obtained—for any country. The Court's confidence in Guerra Morales's foreseeable removal to Mexico is further undermined by the fact that other district courts recognize that Mexico's acceptance of a Cuban national may be contingent upon the noncitizen's agreement to go there, which Respondents do not have. See Sanchez v. Bondi, et al., No. C25-2573-KKE, 2026 WL 160882, at 3-4 (W.D. Wash. Jan. 21, 2026) (noting that Mexico's conditional acceptance casted doubt on Respondents' ability to remove the petitioner); Arenado-Borges v. Bondi, No. 2:25-cv-2193-JNW, 2020WL 3687518, at *4 (W.D. Wash. Dec. 19, 2025) ("[T]he record suggest Mexico's acceptance may be contingent on the noncitizen's consent").

In short, Respondents have had more than three years since Guerra Morales's order of removal—and more than six months since his present detention—to remove him from the United States and are still unable to articulate a specific plan for his removal to Cuba, Mexico, or another country. And while there may be some possibility that Mexico will eventually accept Guerra Morales—notwithstanding his criminal history and CAT status—"that is not same as a significant likelihood that [he] will be accepted in the reasonably foreseeable future." Arenado-Borges, 2025 WL 3687518, at *4 (emphasis added, quotations omitted).

Based on the evidence, or lack thereof, the Court finds that Respondents do not show a significant likelihood that Guerra Morales will be removed in the reasonably foreseeable future. Therefore, he is entitled to release from detention under Zadvydas, but he remains subject to the terms of an order of supervision.[4] If he fails to comply with the conditions of release, Guerra Morales may be subject to criminal penalties—including further detention.  See 8 U.S.C. § 1253(b); Zadvydas, 533 U.S. at 695("[W]e nowhere deny the right of Congress . . . to subject [aliens] to supervision with conditions when released from detention, or to incarcerate them where appropriate for violations of those conditions.").

If removal becomes likely in the reasonably foreseeable future, ICE can re-detain Guerra Morales to "assur[e] [his] presence at the moment of removal."  Zadvydas, 533 U.S. at 680.

---

[4] In a footnote to their supplemental response, Respondents "also contend[] the petitioner's continued detention is also authorized under 8 CFR § 241.13(b)(2)(i), which provides for continued detention where special circumstances exist, as well as under § 241.14(f) which provides for the detention of aliens determined to be dangerous."  (Doc. 23 at 2, n. 1).  Respondents do not explain or support their argument in any manner and do not allege that Guerra Morales's case has been referred to an immigration judge for a hearing to determine whether evidence of special circumstances justify his continued detention.  Thus, the Court is not persuaded by this cursory and unsupported assertion. The law is clear on this matter.  The Government cannot lock individuals in a cell indefinitely as a workaround for a stalled deportation process.  Zadvydas, 533 U.S. at 679.

### III. Conclusion

Accordingly, it is **ORDERED**:

1.    Miakel Guerra Morales's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED** to the extent set forth in this Order.

2.    Respondents shall release Guerra Morales within 24 hours of this Order and facilitate his transportation from the detention facility by allowing him telephone access to notify counsel and his family of when and where he can be collected.

3.    The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on July 8, 2026.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

7